**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| NICOLE GONZALEZ, <br> on behalf of Plaintiff and the class <br> members described herein, | ) <br> ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) <br> ) | |
| v. | ) <br> ) | Case No.: 3:24-cv-50038 |
| NISWI, LLC doing business as <br> LENDUMO; <br> SOAREN MANAGEMENT, LLC; <br> LDF HOLDINGS, LLC; <br> BRITTANY ALLEN; <br> and JOHN DOES 1-20, | ) <br> ) <br> ) <br> ) <br> ) <br> ) | DEMAND FOR TRIAL BY JURY |
| Defendants. | ) <br> ) | |

## COMPLAINT – CLASS ACTION

## INTRODUCTION

1. Plaintiff, Nicole Gonzalez, brings this action against Defendants (a) Niswi, LLC doing business as LendUMo ("Niswi"), (b) Soaren Management, LLC ("Soaren"), (c) LDF Holdings, LLC, (d) Brittany Allen, and (e) John Does 1-20 to secure redress for usurious and illegal loans (such as Exhibit A) made to Illinois residents.

2. Plaintiff seeks a declaratory judgment that the loans are void and an injunction against their collection (Count I), damages pursuant to the Illinois Interest Act, 815 ILCS 205/6 (Count II), and treble damages under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964 (Counts III-IV).

## JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 (general federal question), 15 U.S.C. § 1692k (FDCPA), 18 U.S.C. § 1964 (RICO), 28 U.S.C. § 1337 (interstate commerce), and 28 U.S.C. § 1367 (supplemental jurisdiction). Jurisdiction may also exist under 28 U.S.C. § 1332(d) (Class Action Fairness Act).

-1-

4. This Court has personal jurisdiction over Defendants because they:

a. Knowingly participated in the making and collection of unlawful loans to Illinois residents. In similar actions against purported "tribal" lenders, courts have held that personal jurisdiction over the persons involved in making the loans exists in the state where the borrower obtained a loan via the Internet, and in which loan funds were disbursed via ACH transfer. *Gingras v. Rosette*, 5:15cv101, 2016 U.S. Dist. LEXIS 66833, 2016 WL 2932163, at *2-3, *9 (D. Vt. May 18, 2016)*, aff'd sub nom. Gingras v. Think Fin., Inc.*, 922 F.3d 112 (2d Cir. 2019) (finding that tribal lending entity's contacts with Vermont "would have been sufficient to subject [the tribal entity] to personal jurisdiction in Vermont" for purposes of claims for violations of state and federal law, including state usury laws and RICO, where tribal entity operated a website that advertised loans in Vermont, sent emails and loan applications to Vermont consumers and transferred loan principal to consumers' Vermont bank accounts); *Duggan v. Martorello*, 18cv12277, 2022 U.S. Dist. LEXIS 58075, at *33-34, 2022 WL 952183 (D. Mass. Mar. 30, 2022); *Dawkins v. Blue Dart Ventures*, 8:20cv2353, 2021 U.S. Dist. LEXIS 130297 (M.D. Fla. Apr. 1, 2021).

b. Selected which states to offer loans in, thereby targeting those states. *Illinois v. Hemi Group, LLC*, 622 F.3d 754, 760 (7th Cir. 2010).

5. Venue is proper because acts to obtain and collect the loans impacted Plaintiff in Illinois.

6. Article III is satisfied because actions for statutory damages and invalidation of loans for usury were entertained by the courts of England and the United States in 1787. English Usury Act of 1713, 12 Anne Session 2 c. 17. All thirteen original American states replaced the English usury statutes with their own usury laws between 1641 and 1791. Christopher L. Peterson, *Usury Law, Payday Loans, and Statutory Sleight of Hand: Salience Distortion in American Credit Pricing Limits*, 92 Minnesota Law Review 1110, 1116-18 (April 2008), summarizing statutes allowing 5% to 8% interest.

## **PARTIES**

<u>Plaintiff</u>

7.      Plaintiff Nicole Gonzalez is a natural person who at all times relevant has resided in Loves Park, Illinois.

<u>Defendants</u>

**LDF Holdings**

8.      Defendant LDF Holdings, LLC ("LDF Holdings") is a limited liability company that claims to be wholly owned, indirectly, by the Lac du Flambeau Band of Lake Superior Chippewa Indians (the "LDF Tribe"). Its website claims that "LDF Holdings owns and manages the entire online lending business." ([https://ldf-holdings.com/about](https://ldf-holdings.com/about)) (<u>Exhibit B</u>) As set forth below, that is not true.

9.      The LDF Tribe is a small, isolated, and economically depressed Indian Tribe located in rural Wisconsin.

**Brittany Allen**

10.      Defendant Brittany Allen was Interim Executive Administrator of LDF Holdings, LLC, from February 2019 to present and Director of Lending of LDF Business Development Corporation from November 2022 to present. (<u>Exhibit C</u>)

11.      In these positions, Brittany Allen conducted the high-interest lending activities complained of herein, and directed and controlled the lending activities, policies and practices of LDF Holdings, LLC.

**Niswi, LLC doing business as LendUMo**

12.      Defendant Niswi, LLC doing business as LendUMo purports to be a limited liability company chartered under the Laws of the Lac Du Flambeau Band of Lake Superior Chippewa Indians. It conducts online lending at high interest rates, in excess of 450%. It does business via its website, [www.lendumo.com](www.lendumo.com).

13.      Niswi, LLC doing business as LendUMo claims to be "a commercial

enterprise and instrumentality of the Lac du Flambeau Band of Lake Superior Chippewa Indians, a federally recognized sovereign Indian nation (the 'Tribe') . . . ." (Exhibit D, p. 5)

14.     In fact, as described below, the principal economic benefit of the activities of Niswi, LLC doing business as LendUMo is received by non-Native American persons.

### Soaren Management, LLC

15.     Defendant Soaren Management, LLC ("Soaren") is a limited liability company organized under Delaware law. It has offices in Scottsdale, AZ and Las Vegas, NV. Its registered agent and office is Capitol Services, Inc., 108 Lakeland Ave., Dover, DE 19901.

16.     Soaren is indirectly owned by Andrew Dunn. The sole member/manager of Soaren is Kraken Holdings, LLC, a Minnesota limited liability company which uses the addresses 8000 Norman Center Drive, Suite 860, Bloomington, MN 55437, and 7020 E. Acoma Drive, Scottsdale, AZ 85254. Andrew Dunn, in turn, is the sole manager of Kraken Holdings, LLC. He thus is able to direct the lending operations. He is not a member of the Tribe.

17.     Soaren and Dunn are the true beneficial owners of LendUMo, along with Soaren's subsidiaries and investors.

18.     Soaren ostensibly is a "service provider" for LendUMo. In fact, it performs loan portfolio management, payment collection, call center operations, credit reporting, and customer service on behalf of LendUMo – essentially all functions of the lending operation. On information and belief, calls to the LendUMo customer service phone number are answered by Soaren employees in Las Vegas. The Tribe lends its name to the operation and receives a fee of about 2% of the revenues generated.

### John Does 1-20

19.     Defendants John Does 1-20 are other persons and entities that participated in the lending activities described herein.

### GENESIS AND NATURE OF LENDING SCHEME

20.     An article published in the LDF Tribe's newsletter, *Inwewin*, in July 2013 noted

that the tribe had embarked on a new internet lending business. The article stated that "some view payday loan and internet lending businesses as predatory, with companies taking advantage of individuals already in unpleasant financial situations." The article also stated that "the Tribe has partnered with one of the largest and most experienced lending companies." (Exhibit E)

21.     Lacking both capital and experience, and in desperate need of money, the tribe attempted to rent out one of its few remaining assets – its sovereign immunity – to non-tribal persons and entities who agreed to pay the LDF Tribe a small percentage of each loan as a fee or commission.

22.     Within a short period of time, the LDF Tribe became one of the most prolific suppliers in the rental market for sovereign immunity, making "rent-a-tribe" agreements with over 50 different non-tribal investors.

23.     The LDF Tribe received between one and three percent of revenues from each of these lenders in exchange for the use of its name.

24.     Loan approval was made by the non-tribal owners of each lender. Electronic documents were transmitted to a representative on LDF tribal soil in Wisconsin, who rubber-stamped approval for the loan while technically on the LDF Tribe's reservation. The loans are then funded from bank accounts to which the tribe has no access, and the loans are serviced and collected by nontribal entities off the LDF Tribe's reservation.

25.     Brent McFarland, then the LDF Tribe's director of business development, told the Milwaukee Journal Sentinel that "we're looking for ways to leverage (the tribe's) sovereignty" for profit. Cary Spivak, "Lac du Flambeau Cheppewa enter payday loan business with eye to online gambling," Milwaukee Journal Sentinel, Dec. 29, 2013, http://archive.jsonline.com/business/lac-du-flambeau-chippewa-enter-payday-loan-business-with-eye-to-online-gambling-b99164952zl-237906421.html. (Exhibit F)

26.     The Tribe thereafter entered into "rent a tribe" arrangements with dozens of non-tribal entities.

27. The role of LDF Holdings is to make it a appear that the lending business was "tribally" owned, in exchange for about 2% of the revenues from the loans.

28. Niswi, LLC doing business as LendUMo makes loans through its website (Exhibit D) to consumers at interest rates in excess of 450% annually.

29. Niswi, LLC doing business as LendUMo does business in Illinois over the Internet, via text message, via Automated Clearing House transactions, and over the telephone.

30. Many of the loans made by Niswi, LLC doing business as LendUMo are made to Illinois residents, including Nicole Gonzalez.

31. These residents have received funds via ACH transfers into bank accounts located in Illinois. The loans also provide for repayment via ACH transfers.

32. At the time of the loan at issue, Niswi, LLC doing business as LendUMo's website specified a list of states in which it made loans including Illinois.

33. Niswi, LLC doing business as LendUMo – and the Defendants actually conducting the lending operation – thus affirmatively sought out and targeted Illinois residents for such loans.

34. The funds lent are transferred by ACH credit to the borrowers' bank accounts in Illinois.

35. Repayment of the loans is made by ACH debit from the borrowers' bank accounts in Illinois.

## LOAN TO PLAINTIFF

36. On or about January 28, 2022, Niswi, LLC made a $1300 loan to Plaintiff. (Exhibit A) The loan would result in repayment of $5954.40 if paid as scheduled. The total interest charged would be $4654.40, which according to Niswi, LLC equates to an annual percentage rate of 580.942%.

37. The loan agreement is a standard form.

38. The loan was made for personal purposes and not for business purposes.

39.     The proceeds were transferred to Plaintiff's bank account in Illinois via ACH.

40.     The loan was made entirely via the Internet.

41.     The loan was to be repaid via ACH.

42.     Plaintiff made some of the payments, including interest.

43.     Niswi continues to attempt to collect the balance.

44.     Niswi's lending does not actually occur on the Tribe's reservation.

45.     A significant majority of the transaction occurs within the State of Illinois – applying for the loan and receiving and collecting the funds.

46.     The place where a consumer is located when he or she submits an application via an online portal with a Native American tribe determines where the transaction takes place for jurisdictional purposes. *California v. Iipay Nation of Santa Ysabel,* 898 F.3d 960, 968 (9th Cir. 2018) ("However, the patrons' act of placing a bet or wager on a game of DRB while located in California constitutes gaming activity that is not located on Indian lands, violates the UIGEA, and is not protected by IGRA.").

47.     Plaintiff has never set foot on the LDF Tribe's land.

48.     Loans to Illinois residents made in the same manner as the loan to Plaintiff are governed by the laws of the State of Illinois.

**ILLINOIS PROHIBITIONS ON PREDATORY LOANS**

49.     Effective March 23, 2021, the Illinois Predatory Loan Prevention Act made it unlawful for anyone other than a bank to make loans to Illinois residents at annual percentage rates in excess of 36%. 815 ILCS 123/15-1-1 *et seq.* "Any loan made in violation of this Act is null and void and no person or entity shall have any right to collect, attempt to collect, receive, or retain any principal, fee, interest, or charges related to the loan." 815 ILCS 123/15-5-10.

50.     Under 815 ILCS 123/15-10-5(b), "Any violation of this Act, including the commission of an act prohibited under Article 5, constitutes a violation of the Consumer Fraud and Deceptive Business Practices Act."

51.     Both before and after March 23, 2021, it was unlawful for anyone who did not have a bank or credit union charter or a consumer lending license issued by the Illinois Department of Financial and Professional Regulation to make loans at more than 9% interest. 815 ILCS 122/1-15, 4-5; 205 ILCS 670/1.

52.     Any loans to Illinois residents at more than 9% that are made by unlicensed persons are void and unenforceable. 205 ILCS 670/20(d) ("Notwithstanding any other provision of this Section, if any person who does not have a license issued under this [Consumer Instalment Loan] Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the person who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan."); 815 ILCS 122/4-10(h) ("(h) Notwithstanding any other provision of this Section, if a lender who does not have a license issued under this [Payday Loan Reform] Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the lender who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan.").

53.     Any loans to Illinois residents at more than 9% that are made by unlicensed lenders violate the Interest Act, 815 ILCS 205/4, and are subject to statutory damages under 815 ILCS 205/6.

54.     Illinois has a criminal usury statute defines the making of a loan by unlicensed persons at more than 20% interest as a felony. 720 ILCS 5/17-59 (formerly 720 ILCS 5/39-1 *et seq*). It applies to a person who "while either within or outside the State, by his own conduct or that of another for which he is legally accountable," engages in conduct that amounts to an offense if "the offense is committed either wholly or partly within the State." 720 ILCS 5/1-5.

55.     Contracts made in violation of licensing requirements intended to protect the public, or in violation of criminal laws imposing substantial penalties, are void. *Chatham Foot Specialists, P.C. v. Health Care Serv. Corp.*, 216 Ill. 2d 366, 380, 837 N.E.2d 48 (2005). Neither choice of law clauses or other contractual devices can be used to avoid invalidation of loans made at criminally

usurious rates. *Madden v. Midland Funding, LLC,* 237 F. Supp. 3d 130, 150 (S.D.N.Y. 2017) ("That New York chose to criminalize such conduct is further evidence that its usury prohibition is a fundamental public policy."); *MacDonald v. CashCall, Inc.,* 16cv2781, 2017 U.S. Dist. LEXIS 64761, 2017 WL 1536427, *7 (D.N.J., April 28, 2017).

56.     The Illinois Department of Financial and Professional Regulation has repeatedly brought cases against unlicensed out of state tribal and other lenders that make loans via the Internet or similar means to Illinois residents in Illinois. *E.g., In the Matter of Red Leaf Ventures, LLC,* No. 12 CC 569 (https://www.idfpr.com/dfi/ccd/Discipline/RedLeafVenturesCDOrder12CC569.pdf), *In the Matter of Money Mutual, LLC,* No. 12 CC 408 (https://www.idfpr.com/dfi/ccd/Discipline/ MoneyMutualCDOrder12CC408.pdf); *In the Matter of Hammock Credit Services,* No. 12 CC 581 (https://www.idfpr.com/dfi/ccd/Discipline/HammockCreditCDOrder12CC581.pdf); *In the Matter of Makes Cents, Inc., d/b/a Maxlend,* No. 17 CC 133 (https://www.idfpr.com/dfi/ CCD/Discipline/17CC133%20-%20Make%20Cents%20dba%20Maxlend%20Cease%20and%20De sist%20Order%20Bob%208%2016%202017.pdf).

57.     LDF Holding and LendUMo are aware from prior litigation and warnings by state authorities that its lending operations are illegal. E.g., Washington Department of Financial Institutions notice. (Exhibit G)

58.     The excessive interest charges imposed by Defendants were willful.

**INVALIDITY OF CLAIM OF TRIBAL IMMUNITY**

59.     In an attempt to evade prosecution under usury laws of states like Illinois, online lenders frequently create an elaborate charade claiming their otherwise illegal businesses are entitled to the sovereign immunity of Native American tribes.

60.     However, an entity must function as a legitimate "arm of the tribe" in order to fall under that tribe's sovereign immunity. *See Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort,* 629 F.3d 1173, 1183 (10th Cir. 2010).

61.     To determine if a particular entity is entitled to sovereign immunity, the majority of

courts have adopted the framework laid out in *Breakthrough*, which analyzed "(1) [the entities']
method of creation; (2) their purpose; (3) their structure, ownership, and management, including the
amount of control the tribe has over the entities; (4) whether the tribe intended for the entities to
have tribal sovereign immunity; (5) the financial relationship between the tribe and the entities; and
(6) whether the purposes of tribal sovereign immunity are served by granting immunity to the
entities." *Breakthrough* at 1183, 1187-88.

62.     These so-called "tribal lenders" usually do not survive scrutiny when examined
closely, since virtually all business functions occur far from tribal land, are conducted by nontribal
members, and overwhelmingly benefit non-tribal members to such a degree that tribal involvement
is effectively nil.

63.     Where non-tribal individuals and entities control and manage the substantive lending
functions, provide the lending capital necessary to support the operation, and bear the economic risk
associated with the operation, they are not in fact "operated" by Native American tribes and,
therefore, are not shielded by sovereign immunity.

64.     Further, sovereign immunity, even if legitimately invoked, still does not turn an
otherwise illegal loan into a legal one. *See, e.g., United States v. Neff,* 787 F. App'x 81 (3d Cir. 2019)
(upholding criminal convictions of two individuals engaged in an online payday lending rent-a-tribe
scheme; sovereign immunity does not transform illegal loans into legal ones, and "reasonable people
would know that collecting unlawful debt is unlawful").

65.     Attempting to circumvent state interest rate caps by fraudulently hiding behind tribal
sovereign immunity has been found to constitute criminal conduct. On October 13, 2017, a jury in
the U.S. District Court for the Southern District of New York convicted Scott Tucker and Timothy
Muir on 14 felony counts for their operation of a network of tribal lending companies. *See United
States v. Tucker, et al.*, No. 1:16-cr-00091-PKC (S.D.N.Y). The conviction was affirmed in *United States
v. Grote*, 961 F.3d 105 (2d Cir. 2020).

## COUNT I - DECLARATORY AND INJUNCTIVE
## RELIEF AGAINST ILLEGAL CONDUCT

66.     Plaintiff incorporates paragraphs 1-65.

67.     This claim is against all Defendants.

68.     There is a controversy between Plaintiff and the class, on the one hand, and Defendants, on the other, as to whether Plaintiff and the class members must repay the loans made to them.

69.     Declaratory relief will resolve such controversy.

70.     An injunction is necessary to prevent Defendants from taking any action to collect the void debts.

## CLASS ALLEGATIONS

71.     Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(2).

72.     The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of LendUMo at more than 9% interest (c) which loan has not been paid in full.

73.     Plaintiff may alter the class definition to conform to developments in the case and discovery.

74.     The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

75.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

76.     Plaintiff will fairly and adequately represent the class members. Plaintiff has retained

counsel experienced in class actions and consumer credit litigation.

77.     Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

78.     Defendants have acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate.

79.     The class is entitled to a declaration that Defendants are not entitled to collect on the loans described, an injunction against any further collection efforts by Defendants, and restitution of all such amounts collected by Defendants.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

        i.     Injunctive relief;

        ii.    Declaratory relief;

        iii.   Restitution of all amounts collected on the loans from members of the class;

        iv.   Costs of suit; and

        v.    Such other and further relief as the Court deems proper.

## COUNT II – ILLINOIS INTEREST ACT

80.     Plaintiff incorporates paragraphs 1-65.

81.     This claim is against all Defendants.

82.     Defendants contracted for and collected loans at more than 9% interest from Plaintiff and the class members, in violation of 815 ILCS 205/4.

83.     Plaintiff and the class members are entitled to statutory damages under 815 ILCS 205/6.

## CLASS ALLEGATIONS

84.     Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

85.     The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of LendUMo at more than 9% interest (c) which loan is still outstanding or has been paid on or after a date two years prior to the filing of suit.

86.     Plaintiff may alter the class definition to conform to developments in the case and discovery.

87.     The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

88.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

89.     Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

90.     Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

91.     A class action is superior for the fair and efficient adjudication of this matter, in that:

    a.      Individual actions are not economically feasible.

    b.      Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

    i.       Damages as provided in 815 ILCS 205/6.

    ii.      Attorney's fees, litigation expenses and costs of suit; and

    iii.     Such other and further relief as the Court deems proper.

## COUNT III – RICO

92.     Plaintiff incorporates paragraphs 1-65.

93.     This claim is against Brittany Allen, Soaren and the Does, who are the RICO "persons."

94.     All loans made in the name of Niswi, LLC d/b/a LendUMo to Illinois residents are (a) unenforceable under Illinois law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business of lending money at a rate usurious under Illinois law, where (c) the usurious rate is at least twice the enforceable rate (36%).

95.     The loans are therefore "unlawful debts" as defined in 18 U.S.C. § 1961(6).

96.     Niswi, LLC d/b/a LendUMo is an enterprise affecting interstate commerce, in that it is located outside of Illinois and makes loans to Illinois residents via the Internet.

97.     Defendants Brittany Allen, Soaren and the Does are associated with this enterprise.

98.     Defendant Brittany Allen, Soaren and the Does conducted or participated in the conduct of the affairs of Niswi, LLC d/b/a LendUMo through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C. § 1962(c).

99.     Plaintiff was deprived of money as a result.

## CLASS ALLEGATIONS

100.    Plaintiff brings this claim on behalf of a class.

101.    The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of Niswi, LLC d/b/a LendUMo at more than 36% interest (all of its loans qualify) (c) which loan was made on or after a date 4 years prior to the filing of suit.

102.    The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

103.    There are questions of law and fact common to the class members, which common

-14-

questions predominate over any questions relating to individual class members. The predominant common questions are:

  a.  Whether the loans at issue are "unlawful debts" as defined in RICO.

  b.  Whether Niswi, LLC d/b/a LendUMo is an "enterprise."

  c.  Whether Defendant Brittany Allen is associated with Niswi, LLC.

  d.  Whether Defendant Soaren is associated with Niswi, LLC.

  e.  Whether the Does are associated with Niswi, LLC.

  f.  Whether Defendants Brittany Allen, Soaren and the Does conducted or participated in the affairs of Niswi, LLC d/b/a LendUMo through a pattern of making and collecting unlawful loans.

104.  Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

105.  Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

106.  A class action is superior for the fair and efficient adjudication of this matter, in that:

  a.  Individual actions are not economically feasible.

  b.  Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants Brittany Allen, Soaren and the Does for:

  i.   Treble damages;

  ii.  Attorney's fees, litigation expenses and costs of suit; and

  iii. Such other or further relief as the Court deems proper.


*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman (ARDC 0712094)

-15-

Tara L. Goodwin (ARDC 6207473)
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

## **JURY DEMAND**

Plaintiff demands trial by jury.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

## <u>NOTICE OF LIEN AND ASSIGNMENT</u>

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.


<u>*/s/ Daniel A. Edelman*</u>
Daniel A. Edelman

## <u>DOCUMENT PRESERVATION DEMAND</u>

Plaintiff hereby demands that each Defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff, class members, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If any Defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendant.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

<u>**EXHIBITS**</u>

A        Plaintiff's loan document

B        Material from website of LDF Holdings

C        Brittany Allen LinkedIn page

D        Material from website of Niswi, LLC

E        Article published in the LDF Tribe's newsletter, *Inwewin*, in July 2013

F        Cary Spivak, "Lac du Flambeau Cheppewa enter payday loan business with eye to online gambling," Milwaukee Journal Sentinel, Dec. 29, 2013

G        "Lac Du Flambeau Band of Lake Superior Chippewa Indians Tribal Lender Not Licensed in Washington, Washington Department of Financial Institutions, July 10, 2017